UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MDG-RIO V LIMITED,<br><br>*Plaintiff*,<br><br>v.<br><br>CITY OF SEGUIN, TEXAS and MAYOR DON KEIL,<br><br>*Defendants*. | Case No. SA-18-cv-00882-OLG |

# MEMORANDUM OPINION AND ORDER

On this date, the Court considered the Fed. R. Civ. P. 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction (docket no. 9) (the "Motion") filed by Defendants City of Seguin, Texas and Mayor Don Keil (collectively, "Defendants"). Having reviewed and considered Defendants' Motion and the parties' briefing, the Court finds that Defendants' Motion should be denied.

## BACKGROUND

The case involves a series of disputes related to a tract of land (the "Property") that Plaintiff MDG-RIO V Limited ("Plaintiff") owns and intended to development as a subdivision in Seguin, Texas. Plaintiff generally alleges that after it received vested rights in the Property and approval from the City of Seguin, Texas (the "City") for development of a subdivision of pre-manufactured homes, the City changed course and has since prohibited Plaintiff from developing the Property in its intended manner. Specifically, Plaintiff asserts that the City annexed the Property within the City's zoning authority[1] and issued an ordinance limiting development of the

---

[1] According to the Complaint, the Property was previously in the City's Extra Territorial Jurisdiction ("ETJ"), and thus, the City had no zoning authority to restrict the use of the

1

annexed Property to "single-family residential" housing. *See* docket no. 1-1 (the "Ordinance").
According to Plaintiff, the Ordinance was passed because the City did not want to permit the construction of pre-manufactured (and thus less expensive) homes, and instead, the City wanted the Property developed as a "traditional single-family housing community" (for which housing prices are higher).[2] *See* docket no. 1 ¶¶ 42-43. In support, Plaintiff describes several alleged interactions with the City, the City Attorney, and Mayor Don Keil (the "Mayor") in the days and months leading up to the annexation of the Property and issuance of the Ordinance. *See id.* at ¶¶ 27, 33-34. According to Plaintiff, the City has justified its change of position, annexation of the Property, and issuance of the Ordinance by asserting that (i) there was a mistake in Plaintiff's plat application, and (ii) pre-manufactured home communities are "high crime." *See id.* at ¶¶ 28-34. Plaintiff further states that it asked the City if "there [were] "non-futile steps [Plaintiff could] or should take to address [the City's] decision" with respect to Plaintiff's Property, and Plaintiff asserts that it received no response from the City. *See id.* at ¶ 33.

Following the actions Defendants allegedly took to prevent Plaintiff from developing the Property as intended, Plaintiff filed the Complaint in which it asserts several claims against the City and/or the Mayor. *See* docket no. 1. Specifically, Plaintiff asserts: (1) a claim for violation of § 43.002 of the Texas Local Government Code based on Defendants' alleged actions to prevent development of the Property;[3] (2) a Fifth Amendment regulatory takings claim pursuant

---

Property. *See* docket no. 1 ¶ 12. The Complaint alleges that in early 2018, the City annexed the Property such that it became subject to city zoning. *See id.* at ¶¶ 31-32.

[2] Plaintiff asserts—upon information and belief—that Defendants are no longer approving any pre-manufactured home development applications anywhere within the city limits. *See* docket no. 1 ¶ 7 n.4.

[3] Although Plaintiff's Complaint does not include a specific "cause of action" under § 43.002, the introductory paragraph of the Complaint and Plaintiff's Fifth Amendment "takings" cause of action indicate that Plaintiff is asserting a violation of § 43.002 against Defendants. *See* docket no. 1 pp. 1 & 19. Defendants' briefing also indicates that Defendants have interpreted Plaintiff's

to 42 U.S.C. § 1983 based on Defendants' alleged actions to prevent development of the Property; (3) Fourteenth Amendment substantive and procedural Due Process Clause claims pursuant to 42 U.S.C. § 1983 based on the procedure under which Plaintiff's property rights were "taken" and an alleged "conspiracy" by Defendants; (4) a Fourteenth Amendment Equal Protection Clause claim pursuant to 42 U.S.C. § 1983 asserting that the City's actions were taken "because [the City] does not want affordable housing, accessible to poor people and minorities, in this area"; (5) a claim for the violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, based on the "disparate impact" that the City's ordinance has on "minority individuals and families"; and (6) an estoppel claim based on the City's alleged approval of Plaintiff's development plan and Plaintiff's detrimental reliance on the Defendants' actions. *See id.* at ¶¶ 37-46. Plaintiff's Complaint requests monetary, declaratory, and injunctive relief. *See id.* at ¶¶ 47-56.

On September 28, 2018, Defendants moved to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1). *See* docket no. 9. Defendants' Motion asserts that Plaintiff's Fifth Amendment takings claim is unripe, and thus, because Defendants believe that Plaintiff's other claims arise out of the takings claim, Defendants contend that the Court lacks subject-matter jurisdiction over all of the claims in the dispute. *See id.* Plaintiff filed a response to Defendants' Motion, and Defendants filed a reply in support of their Motion. *See* docket nos. 12 & 13.

## DISCUSSION

"Ripeness doctrine enforces the Constitution's limit of federal court jurisdiction to cases or controversies by preventing premature litigation." *Archbold-Garrett v. New Orleans City*, 893 F.3d 318, 321 (5th Cir. 2018). "[A] claim is not ripe for adjudication if it rests upon contingent

---

Complaint to be asserting a "violation of Chapter 43 of the Texas Local Government Code." *See* docket no. 13 ¶ 1.

future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotations omitted). In *Williamson County Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), the Supreme Court held that "[b]ecause the Fifth Amendment proscribes taking *without just compensation*, no constitutional violation occurs until just compensation is denied." *Id.* at 194 n.13 (emphasis in original). "The nature of the constitutional right therefore requires that a property owner utilize [state] procedures for obtaining compensation before bringing a § 1983 action." *Id.* For that reason, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used that procedure and been denied just compensation." *Id.* at 195. Specifically, such a standard is only satisfied once "(1) the relevant governmental unit has reached a final decision as to how the regulation will be applied to the landowner; and (2) the plaintiff has sought compensation for the alleged taking through whatever adequate procedures the state provides." *Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d 281, 292-93 (5th Cir. 2006).

In light of *Williamson County*'s requirements, courts have regularly found that takings claims should be dismissed as unripe for review if there has been no "final" governmental decision with respect to the plaintiff's property or if the plaintiff has not yet sought "just compensation" under state law. *See, e.g., Villa Montechino, L.P. v. City of Lago Vista*, No. A-17-CA-00287-SS, 2017 WL 2198172, at *3-4 (W.D. Tex. May 18, 2017); *Woodlake Partners, Inc. v. Guadalupe Cty.*, No. 5:11–cv–00647, 2011 WL 5827260, at *1 (W.D. Tex. Nov. 17, 2011). One such "procedure" for seeking compensation under Texas law is an "inverse condemnation" proceeding pursuant to Article 1, Section 17 of the Texas Constitution. Under Texas law, an "inverse condemnation" occurs when the government physically appropriates or invades the

4

property, or when it unreasonably interferes with the landowner's right to use and enjoy the property, such as by restricting access or denying a permit for development.[4] *See Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992). As a general rule, the application of a zoning law to a particular property may constitute an "inverse condemnation" or "regulatory taking" if the ordinance or regulatory action is "functionally equivalent to the classic taking" due to "the severity of the burden that the government [has imposed] upon private property rights." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005).[5] When such a "taking" occurs in Texas, an aggrieved property holder may seek relief from the governmental entity through a state-law inverse condemnation claim pursuant to Article I, Section 17 of the Texas Constitution. *See Villa Montechino*, 2017 WL 2198172, at *2.

Here, it appears that Plaintiff has not yet sought relief through a state-law inverse condemnation claim, and thus, Defendants contend that *Williamson County* and its progeny mandate that Plaintiff's takings claim be dismissed as unripe.[6] *See* docket no. 9 ¶¶ 9-10 (citing *Sandy Creek Investors, Ltd. v. City of Jonestown, Tex.*, 325 F.3d 623, 626 (5th Cir. 2003)). Further, Defendants note that certain courts have found that any claims that are "subsumed" by a takings claim should also be dismissed if a plaintiff's takings claim is unripe. *See* docket no. 13

---

[4] Inverse takings can be classified as either physical or regulatory. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex. 1998).

[5] The Texas Supreme Court has confirmed that the protections afforded by the Texas Constitution with respect to government "takings" are comparable in scope to the protections afforded by the Fifth Amendment of the United States Constitution. *See Sheffield Dev. Corp. v. City of Glenn Heights*, 140 S.W.3d 660, 669 (Tex. 2004) (confirming that the respective constitutional "takings" provisions are comparable and noting that Texas courts regularly look to federal jurisprudence for guidance with respect to analysis of state law "takings" claims).

[6] Defendants' Motion does not contend that the City's actions do not constitute a "final" decision as required by the first prong of the *Williamson County* analysis.

5

¶ 1 (citing *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 89 (5th Cir. 2011)).[7] On that basis, Defendants assert that Plaintiff's other claims should also be dismissed.

Upon review of the issues and the parties' briefing, the Court finds Defendants' argument unpersuasive. Although Defendants' assertions may have merit if *only* a Fifth Amendment takings claim were involved, the relevant precedent makes clear that dismissal of all of Plaintiff's claims is inappropriate in this case.

### I. Plaintiff's Other Claims Are Not All "Subsumed" by Plaintiff's Takings Claim, and Federal Subject-Matter Jurisdiction is Appropriate as to Those Claims.

A claim is "subsumed" for the purposes of the *Williamson County* ripeness analysis if "just compensation for a taking would give [a plaintiff] full relief" for its other claim. *Archbold-Garrett*, 893 F.3d at 322; *Rosedale*, 642 F.3d at 91 (noting that a non-takings claim is also unripe "where the injury that resulted from an alleged [violation] is merely a taking without just compensation"). After reviewing the Complaint, it is clear that certain of Plaintiff's non-takings claims are not "subsumed" by Plaintiff's takings claim.

As initial examples, two of Plaintiff's causes of actions relate to the City's alleged violations of the Fair Housing Act and the Fourteenth Amendment's Equal Protection Clause. *See* docket no. 1 ¶¶ 34-35, 42-43. These claims are premised on Plaintiff's assertion that the City prevented the proposed development of the Property because it did not want housing that was "accessible to poor people and minorities" in the area. *See id.* at ¶ 42. Even assuming that Plaintiff had exhausted state procedures seeking "compensation" for the loss use of the value of the Property, such "compensation" would in no way address the discrimination alleged by

---

[7] In *Rosedale*, the Fifth Circuit had held that the plaintiff's due process claims could not be addressed without knowing the outcome of the takings claim, and thus, both claims were dismissed after the court found that the takings claim was unripe. *See id.*

Plaintiff. Instead, these claims allege independent constitutional or statutory injuries, which would only be addressed by wholly independent remedies.[8] Moreover, Plaintiff's FHA and Equal Protection Clause claims are "ripe," as neither claim rests or relies upon contingent future events, such as the issue of whether Plaintiff receives "just compensation" from the City. Thus, the Court unquestionably has federal question jurisdiction over Plaintiff's FHA and Equal Protection Clause claims at this time, *see* 28 U.S.C. § 1331, regardless of whether (i) the City provided Plaintiff with "just compensation" or (ii) whether Plaintiff violated the doctrine of *Williamson County* by filing the present lawsuit before seeking compensation through any applicable state procedures.

Although less apparent, the Court concludes that the same is true as to Plaintiff's Due Process Clause claim. This Court's analysis is guided in large part by *Archbold-Garrett*, a recent Fifth Circuit case that contains substantial parallels to this action. 893 F.3d 318. In *Archbold-Garrett*, the parties made arguments similar to those being asserted here, and the Fifth Circuit held that a procedural due process violation may be "actionable and compensable" irrespective of whether a related "takings" injury could be addressed by state procedures awarding "just compensation." *Archbold-Garrett*, 893 F.3d at 322; *see also Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("Because the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions . . . the denial of procedural due process should be actionable for nominal damages without proof of actual injury."). Thus, notwithstanding the fact that the plaintiffs in *Archbold-Garrett* had not filed an inverse condemnation claim in state court, the Fifth Circuit concluded that the plaintiffs' procedural due process claim—which asserted that plaintiffs had not been afforded fair notice and an

---

[8] As an example, Plaintiff seeks declaratory relief ordering that the Ordinance violates the Equal Protection Clause of the Fourteenth Amendment. *See* docket no. 1 ¶ 52.

7

opportunity to object to demolition of their property—was ripe because the claim (and remedy sought) did not fully overlap with the plaintiffs' related takings claim.

Here, as was the case in *Archbold-Garrett*, it is not clear that the remedies available to Plaintiff under a state-law inverse condemnation claim would necessarily compensate Plaintiff for the alleged injuries caused by Defendants' due process violations. It appears that—under Texas law—the calculation of "adequate compensation" in an inverse condemnation action related to a "partial" taking is generally based on the difference between the fair market value of the property before and after the "taking." *See State v. McCarley*, 247 S.W.3d 323, 325-26 (Tex. App.—Austin 2007, pet. denied) (collecting cases). For that reason, although it is apparent that Plaintiff *may* be entitled to some monetary sum through an inverse condemnation proceeding if the Ordinance had reduced the value of the Property,[9] it is unclear that such compensation would cover several of the types of damages that Plaintiff asserts were incurred as a result of Defendants' actions.[10] Importantly, Defendants have failed to cite any case law (or any other type of support) demonstrating that those types of damages could be recovered as part of an inverse condemnation proceeding under Texas law, and the Court has found no such indication through its own searches. Accordingly, the Court cannot conclude that Plaintiff's due process claim is definitively subsumed by Plaintiff's takings claim, and thus, Plaintiff's due process claim also appears to be ripe for this Court's consideration.

---

[9] To be clear, at this stage, the Court has not yet fully analyzed whether Plaintiff is necessarily entitled to any compensation (*i.e.*, whether the City's actions constituted a "taking"), or if so, the proper method for calculating such compensation or the amount that should be awarded in this case.

[10] For example, Plaintiff's Complaint seeks recovery of the costs associated with Plaintiff's plat application and money spent securing access to electric facilities and reserve water. *See* docket no. 1 ¶ 47.

## II. *Williamson County*'s Ripeness Doctrine is Prudential, and Fairness and Efficiency Favor Permitting Plaintiff's Takings Claim Regardless of Plaintiff's Failure to Seek State Court Relief.

Having concluded that Plaintiff's Fair Housing Act, Equal Protection Clause and Due Process Clause claims are "ripe" such that the Court has jurisdiction to consider those claims, the Court now must address whether the ripeness requirements of *Williamson County* nonetheless mandate dismissal of Plaintiff's Fifth Amendment takings claim or any other of Plaintiff's claims. As noted above, Defendants do not contend that the City's actions and Ordinance are not "final" with respect to Plaintiff, *see* note 6, *supra*, nor have Defendants identified any specific administrative or regulatory steps Plaintiff should have taken prior to filing its takings claim.[11] Instead, Defendants contend that Plaintiff has failed to satisfy the second prong of the *Williamson County* analysis because Plaintiff did not seek "just compensation" through a state law claim. *See* docket no. 9 ¶ 9.

Defendants' substantive contention is not without merit. Numerous courts have held that—at minimum—a plaintiff must pursue an inverse condemnation claim under Article 1, Section 17 of the Texas Constitution in order for any related Fifth Amendment "takings" claim to be ripe under *Williamson County*'s "just compensation" requirement. *See, e.g., EMF Swiss Avenue LLC v. City of Dallas*, No. 3:17-CV-2995-L, 2017 WL 5192051, at *4 (N.D. Tex. Nov. 8, 2017) ("Under Texas law, EMF has an inverse condemnation suit available to it but has not pursued this avenue, choosing instead to file its claim in federal court."); *Villa Montechino*, 2017

---

[11] Plaintiff's Complaint appears to contend that Plaintiff exhausted any administrative remedies because Plaintiff asked the City what "non-futile steps" Plaintiff could take to address the issue, and the City did not respond to Plaintiff's "inquiry." *See* docket no. 1 ¶ 33. As a general rule, completely futile administrative steps are not required in order for a regulatory decision to be "final" such that it can be the basis for a Fifth Amendment claim. *See Abdelhak v. City of San Antonio*, 2011 WL 13124298, at *9 (W.D. Tex. Dec. 6, 2011) (citing *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1012 n.3 (1992) and *Mayhew*, 964 S.W.2d at 929).

WL 2198172, at *2 (noting that Plaintiff had not met requisite ripeness requirement because its "attempt to seek compensation for the alleged taking through an inverse condemnation claim in Texas state court was cut short"); *Amaya v. City of San Antonio*, No. SA:12-CV-574-DAE, 2014 WL 7339077, at *8 (W.D. Tex. Dec. 23, 2014) (holding that Fifth Amendment takings claim was unripe because plaintiff had not pursued inverse condemnation claim under Art. 1, § 17 of the Texas Constitution). Here, there is no indication that Plaintiff has pursued a state-law inverse condemnation claim, and thus, it appears that Plaintiff has violated the "just compensation" ripeness requirement of *Williamson County*.

Notwithstanding Plaintiff's apparent non-compliance, however, the Supreme Court has also made clear that the *Williamson County* ripeness requirements are merely a prudential doctrine, rather than a jurisdictional doctrine. *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702 (2010) (holding that *Williamson County*'s "just compensation" prong is merely prudential and not jurisdictional). For that reason, dismissal of arguably "unripe" takings claims is *not automatic*, and the Fifth Circuit has repeatedly recognized this distinction in recent years. *See Rosedale*, 641 F.3d at 89; *Archbold-Garrett*, 893 F.3d at 324. Thus, the question of whether "prudential ripeness" requirements should be enforced requires courts to consider "fairness and judicial economy," *Archbold-Garrett*, 893 F.3d at 325, as well as the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

In its recent *Archbold-Garrett* decision, the Fifth Circuit—after concluding that the plaintiffs' due process claim was ripe for consideration—addressed the issue of whether dismissal of plaintiffs' takings claim was nonetheless appropriate because plaintiffs had failed to

pursue a state-law inverse condemnation claim. The Fifth Circuit held that the district court erred in dismissing plaintiffs' takings claim as unripe because "fairness and judicial economy" favored hearing the claim in federal court. *Archbold-Garrett*, 893 F.3d at 325. Specifically, the *Archbold-Garrett* court held that "[s]ending the Appellants' takings claim back to state court while their independent due process claim remains in federal court would needlessly generate additional legal expenses for the parties and would result in piecemeal litigation, which does not serve judicial economy." *Id.* Instead, the Fifth Circuit indicated that the more appropriate approach is for the court to "exercise its discretion to disregard *Williamson County*'s state litigation requirement where the plaintiffs had a ripe Section 1983 due process claim." *Id.* (citing *Town of Nags Head v. Toloczko*, 728 F.3d 391, 299 (4th Cir. 2013)).

The Court finds the Fifth Circuit's binding precedent from *Archbold-Garrett* to be directly applicable to the analogous circumstances in this case.[12] Moreover, because the Court has concluded that Plaintiff's FHA and Equal Protection Clause claims—in addition to Plaintiff's Due Process Clause claim—are also ripe, the justification for excusing *Williamson County*'s ripeness requirements is even more compelling in this case than it was in *Archbold-Garrett*. Here, the alternative conclusion would involve proceeding with several of Plaintiff's claims in this Court while also forcing Plaintiff to conduct highly-related parallel state-court litigation, and such an approach would needlessly cause the parties to incur unnecessary legal costs and delay. Indeed, it would be illogical to force inefficiencies and delay into the proceedings solely for the

---

[12] The circumstances underlying the dispute in *Archbold-Garrett* have striking similarities to those in this case. In *Archbold-Garrett*, like here, it appears plaintiffs attempted to resolve the "takings" issue by communicating in writing with the municipality, and the municipality failed to respond to plaintiffs' requests. *See Archbold-Garrett v. New Orleans City Metro/Durr Group*, Civil Action No. 16-15857, 2017 WL 3158146, at *1 (E.D. La. July 25, 2017). Further, the plaintiffs in *Archbold-Garrett* also did not pursue a state-law inverse condemnation claim, and the plaintiffs' failure to do so was initially the basis for the district court's dismissal of plaintiffs' claims, prior to the Fifth Circuit's reversal. *See id.* at *2-4.

purposes of complying with the terms of a "prudential" doctrine that is based in part on a consideration of "the hardship to the parties." *See Abbott Labs.*, 387 U.S. at 149. Instead, the Court concludes that fairness and judicial economy favor excusing Plaintiff's apparent violation of *Williamson County*'s prudential ripeness requirements.

Accordingly, and notwithstanding the fact that Plaintiff's Fifth Amendment takings claim may not satisfy *Williamson County*'s ripeness requirements, the Court concludes that it is nonetheless appropriate to exercise jurisdiction over the claim. *See Toloczko*, 728 F.3d at 399 (noting that the district court may exercise its discretion with respect to *Williamson County*'s requirements in order "to avoid piecemeal litigation or otherwise unfair procedures"). The Court will therefore permit Plaintiff's Fifth Amendment takings claim to proceed in this forum.[13]

## CONCLUSION AND ORDER

For the reasons set forth above, Defendants' Fed. R. Civ. P. 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction (docket no. 9) is **DENIED**.

It is so **ORDERED**.

SIGNED this ____ day of December, 2018.

ORLANDO L. GARCIA
Chief United States District Judge

---

[13] The Court will also exercise supplemental jurisdiction over Plaintiff's state-law estoppel claim and claim asserted pursuant to § 43.002 of the Texas Local Governmental Code. *See* 28 U.S.C. § 1367. The Court has reviewed those claims, and the Court finds that those claims contain substantial overlap with the issues and factual allegations underlying the claims for which the Court has concluded it may exercise federal question jurisdiction. *See* docket no. 1.